Move to the next case, Klingele v. Workers' Compensation Comm'n, file 11-0532. Counsel, please. Your Honor, thank you. Counsel, John Bishardi for the employee. The employee seeks the court's reversal of the commission's finding of fact and decision in this case on the issues of accident causation and seeks a remand to the commission for further consideration of the facts in this case. The employee would contend that the commission's decision here is a decision in search of a factual basis on which to stand. This court has the ability and has done so in the past, reversed the commission where the facts are against, or the finding is against the manifest way of the facts. I don't believe that it requires this court to substitute its own judgment. As we have pointed out in the brief, the commission's findings are flat out wrong in certain situations and directly refuted by the medical records of the doctors that treated the petitioner between June of 2005 and March of 2006. Isn't there really, isn't this cut to the chase a battle of the medical experts? Dr. Reynolds, Dr. O'Pine, there was a causal connection. Two doctors on the other side says there wasn't. So you've got the weight to be given to the testimony and the credibility. That's within the commission's province, isn't it? I would agree with you it is. However, the commission clearly just ignored Dr. Reynolds' opinion, and Dr. Reynolds is the only person who had an understanding of the work activities relative to the repetitive. Had he reviewed the prior medical records? During the deposition, a lot of the medical records were discussed. Had he reviewed the prior medical records? No, he did not. Is that important? It would be important in the sense that whether his opinions in the hypothetical posed to him did not acknowledge that this petitioner had… Did he base his opinion upon what you told him? He did base his opinion on what I had told him. That's correct. Is that the way to do that? I asked him to assume certain facts. I think that it's permissible for a medical doctor to testify based upon a hypothetical. We did ask him to assume the facts regarding the previous bouts of back pain, which this petitioner had, and the subsequent medical evidence that showed that it had resolved, which undercuts the respondent's expert's opinion upon which the commission relies. Dr. Reynolds was told not only about the prior medical history. We went through, and I think that he was interrogated at some length, regarding the medical records during the deposition, if justice would review that, almost on a visit-by-visit basis, what the findings were and what the complaints were. He was also the only doctor in the record that had an understanding of the repetitive work activities performed by this petitioner in his job. Obviously, you're arguing your point that he had the superior position to give an opinion, but you have the contrary opinions of Drs. Kitchen and Dalheimer. Tell us specifically why the commission couldn't rely on Dalheimer and Kitchens. With respect to Dr. Kitchens, the commission relied upon Dr. Kitchens' opinion, and Dr. Kitchens' opinion was based upon the assumption, proven false by the records, that the petitioner had constant low back and right leg pain from the spring of 2005 through the spring of 2006. And as I was responding to Justice McCullough's question, the records that were offered by us, by the petitioner, showed, and we highlight them in our brief, there is absolutely no complaint of lower back or right leg pain, and it does not appear until March of 2006. That's when the back pain begins to arrive, and then it's not until April of 2006 that right leg pain begins to arrive. So Dr. Kitchens' opinions are based upon an inaccurate assumption of facts. There was no evidence of ongoing right leg pain between the spring of 2005 visit with Dr. Smucker and the time that the petitioner began to treat with Dr. Kirkhard and Dr. Noble and Dr. Reynolds in the early summer of 2006. With respect to Dr. Dalheimer, Dr. Dalheimer specifically states in his report that he has insufficient information to discuss or to offer an opinion on whether the repetitive work activities were a contributing factor or a causative factor in bringing about this condition. It is clear from the face of his report that he is admitting he doesn't know. He doesn't have any information. So his opinions cannot form the basis of a finding that the medical expert says that this condition is not the result of the repetitive activity performed by the petitioner in the years before the April 2006 occurrence of the lower back and or right leg pain. That is the basis for our argument that the Commission's finding on causation is not supported by the evidence in the record, and the medical opinions cannot support the decision. Did he give a statement to a chiropractor in January of 2005 indicating that he had a history of lumbar pain while lifting some heavy objects the previous Saturday? Yes, he did. And Kitchens says, finds it is most likely that the cause of his disc herniation was not related to repetitive trauma but to the specific lifting incident that occurred in January of 2005. That's his opinion. So what's wrong with that? Well, what's wrong with that is that the petitioner sees Dr. Smucker in the spring of 2005. Dr. Smucker notes the lower back problems, and then thereafter, those problems disappear. He goes to physical therapy. He sees other Quincy doctors, and there is absolutely no mention after June of 2005, and you would agree that June of 2005, and I don't mean to be sarcastic, is after January of 2005. There is no medical documentation that there is ongoing right leg or lower back problems. As a matter of fact, the records are very specific. The petitioner's complaints are limited to the rhomboids, the thoracic spine, and it's only in January of 2006 where the lumbar spine is even mentioned, and it's mentioned as a thoracolumbar complaint. There's no leg pain at that time. And then in March of 2006 is when the lower back and right buttock pain appears, and it continues to progress. The petitioner is doing his repetitive activities, which it is clearly repetitive. There is no foundational objection of the facts and description given to Dr. Reynolds that that is not an accurate depiction of what this petitioner's job duties were. The petitioner testified to that at arbitration. All right. Tell us about Dr. Delheimer. What's wrong with his opinion? Dr. Delheimer's opinion was that he had insufficient information. There is nothing in his record to suggest, and he even admits, I have insufficient, and that's the word he used, insufficient information to causally relate a repetitive trauma claim. It doesn't say, I know the job, his job's not repetitive, didn't contribute to this. It says, I don't have the information. Did he testify that the December of 2003 work accident resulted only in soft tissue injury? Did Dr. Delheimer testify? Yeah. He did not testify. Did he give a report that said that? He gave a report that said the December of 2003 accident was not the cause of the – Did he say it was soft tissue injury, yes or no? I don't recall whether it was soft tissue versus – it may have been a soft tissue – Did he also say that the effects of the December of 2003 accident had completely resolved by February of 2004? Yes, he did. And that was – No causal relationship between the employment and his herniated disc and resulting surgery? Between the December 20, 2003 incident and his lumbar condition. That's correct. Okay. He did not address the repetitive activity the petitioner formed in his job. Again, the December 20, 2003 accident was a specific event where a transfer case, I think part of a transmission, fell on top of the petitioner or he caught it. That condition resolved or at least it was no longer the cause of the lumbar spine condition. And Dr. Reynolds agreed with that. That was the reason why we discussed – I discussed it. He didn't know why we were taking the deposition. And I addressed that as well. I think the commission was wrong to sanction or punish or criticize that from taking place. The petitioner is not required to obtain a narrative report or conduct a discovery. And Dr. Reynolds is not a retained expert. He's a treating doctor. Certainly the doctor can be told the facts in a short period of time and ask whether he believes that that could cause the condition. It's not rocket science. It's not brain surgery. He's a smart man. He's a neurosurgeon. He's been doing this for decades. He's been a neurosurgeon for decades. He knows the causes of these conditions. And that was the reason for the conversation. He was cross-examined. Respondent's counsel had the opportunity and cross-examined him at length about his opinions. And I think Dr. Reynolds' opinions were cast aside for no good reason based upon that conversation when that shouldn't have been the case. I think Dr. Reynolds' opinions provide the only medical causation testimony here that is reliable, which indicates an understanding of all the work activities, all the actions. Once again, he had never even reviewed the medical records. No, he had not. That is correct. Is that important? I don't believe it is as important as many people believe. Is it as important as talking to you? If I had not told him or if we had not discussed that he had these problems beforehand, then yes. That undermines his opinion. But as we cite, too, in our brief, the doctor was informed of the prior condition, of prior bouts of leg pain and back pain. That did not detract from his opinion. He testified that he would expect that someone might have prior bouts of back pain. But there is nothing connecting that lower back pain that Dr. Smucker and the chiropractor noted in January and June with the condition he had in 2006, in April 2006, when all the records between them showed that it had resolved. It was a temporary condition. And under the circumstances, the only medical opinion that takes all those factors into account is Dr. Reynolds'. Dr. Kitchens and Dr. Delheimer's reports do not address the petitioner's work activities. Dr. Kitchens, I believe, only addresses the December 20, 2003 accident. Or the other way around. But neither one of them had a description of work activities. So is your argument on the opinions only as good as the underlying facts or data? Because you recognize that it's within the province of the committee to weigh the credibility and the weight of the testimony. So you're attacking and now saying Delheimer and Kitchens were defective in their opinions. That's correct. That has to be your argument. It is. Otherwise you can't get around that other well-settled proposition. No, and that's the basis for our argument in our brief, directly showing the medical records which directly refute the assumptions underlying those opinions. And those records exist there, and they document the petitioner, the employee's complaints. And they show that he didn't have ongoing back pain. And that undermines the commission's decision. What did he tell the adjuster from the insurance company? Excuse me? Did he give a recorded statement to the insurance company adjuster? Yes, he did. What did he say about his ongoing pain? I think he said at that time that he had that problem all the way from the beginning that didn't form the basis of the commission's decision. I didn't ask that. I understand. The insurance carrier got a recorded statement from him. He stated that he had consistently experienced low back pain following the December 20, 2003 incident. Didn't he say that? Yes, he did. And he indicated because he was treating with so many physicians, it took the professionals over two years to determine what was causing his pain? That's what he said. The records would suggest otherwise. The records would suggest that he never had lumbar pain except for the one instance with Dr. Smucker, and he did not understand what was going on. It's clear that he was searching for a reason for why he was having that pain, and I think that explains also why he gave the notice he gave to his supervisor, because at that time he knew he had to have surgery on May 16th, and he knew that that surgery was connected to his work. I think intellectually, this is an unsophisticated person he was struggling with, the connection between his need for surgery and what could have cost him. I don't think it was apparent to him, and that is also the force of some of our other arguments, that occasionally there are people who just don't understand the concepts of repetitive trauma, who don't understand their... Time is up, counsel. Are you people, both of you going to argue? Have you decided, separated your time? May it please the court, counselors. I'm Julia McCarthy on behalf of the respondent, Baird Auto, with regard to the 12-2003 accident only. I note that counsel for petitioner has indicated his arguments today are accident and causation. With regard to the December 2003 accident, accident was not disputed. With regard to that injury, petitioner was found to have a thoracic strain, treated for approximately one month, and there was an order of 2% man as a whole. None of those issues have been disputed by counsel today. Counsel acknowledges this is a factual situation. He indicates that the findings were against the manifesto weight of the evidence. However, as Justice Hoffman has pointed out, we have two medical opinions. Dr. Delheimer, with regard to the 12-2003 accident, did say he had a thoracic spine soft tissue injury, and the herniated disc at L45 was not related to the 12-2003 incident. Further, Dr. Kitchens also provided his opinion. 12-2003, thoracic strain, and the subsequent lumbar problems did not begin until following the January 2005 lifting incident. He relates it specifically to that incident. Dr. Delheimer specifically does not relate it to December 2003. Further, Dr. Reynolds, who is petitioner's doctor, himself provides his opinion that petitioner's low back condition is not related to the 12-2003 incident. I would argue that clearly, with regard to December 20th of 2003, there is no evidence to support any causation as to petitioner's ongoing lumbar problems, nor is petitioner even claiming that at this point. And the decision that was rendered by the Arbitrator Commission and Circuit Court should be affirmed with regard to December 2003, finding the thoracic strain in the award of 2% mean as a whole. Are there any questions, Your Honors? Thank you. Thank you. May it please the Court, Counselors. Ken Gima, I represent the employer on the three repetitive trauma claims. It's our contention that the Arbitrator correctly found on the causation issue, the unanimous Illinois Workers' Compensation Commission correctly found on the causation issue, the Circuit Court also correctly found on the causation issue. There's more than enough evidence to support the unanimous Illinois Workers' Compensation Commission's finding that the repetitive trauma claims were not a causative factor in this gentleman's low back condition. We heard from counsel about the different experts, the different medical evidence. I think one thing we have to first point out, if you look at petitioner's own testimony, he's been consistent throughout this case. He was consistent before he knew of any litigation. Look at every history that he provides to these doctors. He sees a slew of doctors. He sees Dr. Smucker, Dr. Picard, Dr. Reynolds, Dr. Smith, Dr. Kitchens. Consistently, he indicates that he's had these low back conditions since the original accident. He doesn't waver at all as to when his low back complaints started. Consistent with that, he gives a recorded statement to the other carrier's insurance adjuster in 2006. Again, he's saying, I've had low back and leg pain since the original accident. At trial, he says the same thing. I've seen so many doctors, maybe nine different doctors. I've been thrown around the system. No one's really worked up my low back, but it's been symptomatic since that original accident. So we've got petitioner's own testimony, and I put it in the brief. He's in the best position to know if his low back is hurting and when it's hurting. Then you look at the medical evidence. We talked about the medical records. Well, we've got the chiropractor records in April of 2005, indicating the specific accident, the low back complaints. I think Dr. Smucker's records are significant. He saw Dr. Smucker in April of 2005. Dr. Smucker recommended a thoracic lumbar MRI. He noted that the straight leg test was positive. He noted that there was radicular irritation. They're all signs that he had that herniated disc in his condition of pathology back then. The problem was he doesn't get worked up for his low back. He finally gets to Dr. Picard, who I believe is the first orthopedic doctor that he's seen, in April of 2006, and Dr. Picard's consistent. The gentleman comes in and says he's had low back pain for two years and hasn't been worked up. Well, he finally gets worked up, and they identify the problem. Then we get to the experts. The commission, there's more than enough evidence for the commission to look at Dr. Reynolds' testimony and give it no weight. We indicated, and I have a link here, that the medical records that Dr. Reynolds didn't review are enormous. The causal connection opinion consistently in his treating records are, this is all related to a specific lifting incident in December of 2003. It's noted in Dr. Reynolds' physician assistance records, in his records, that all of a sudden prior to the deposition, in less than three minutes, that changes. And what does it change on? Well, he hasn't reviewed the medical records. It's changed on a conversation three minutes before the deposition. The commission, there's more than enough evidence for the commission to look at that hypothetical that he used in addressing causation, and it was said no low back pain until March of 2006. Well, that's not correct. We indicated. We've got the chiropractor records. We've got Dr. Smucker's records. We've got Dr. Smucker's physical exam documenting a positive straight leg raise and radicular irritation. There's more than sufficient evidence to support the unanimous conditions decision. I would ask that it be affirmed. Thank you. Senator Bono. Thank you. The employer argues that the petitioner employee should have known that he had a repetitive trauma claim or that he should have known that his condition might have been caused by repetitive trauma. In our reply brief, we mentioned, as you know, that repetitive trauma is a legal theory. It's not something that is within most people's common knowledge. There is a special concept of the word accident in our practice. Accident is a legal conclusion as well in certain circumstances. I think the petitioner obviously was unaware of what was going on, of why he was having these problems, but he felt it was related to his work activities. It's unfortunate that he wasn't sophisticated enough to verbalize this to his doctors and to anybody else. But nonetheless, the medical records document that he did not have an ongoing back problem. He did not have an ongoing right leg radiculopathy until April of 2006. It is acknowledged that he had a pre-existing condition, but as you know, any worker may establish an aggravation of a pre-existing condition or a further acceleration of that condition caused by repetitive accidents and work activities. That is our theory, and that is what has been alleged, and we believe the evidence supports that. We believe that the Commission, for whatever reason, chose not to consider that repetitive trauma theory because of the notice issues, which you will note the lower court reversed the Commission's finding that the petitioner did not provide notice because it did find that on May 16, 2006, the petitioner did give notice to his employer, again, inartfully, and certainly not clearly stating that he felt his work activities were caused by repetitive trauma. He just knew it was related to work, and that's what he said, and that's all that the law requires. The law requires him to notify his employer that he has a condition and he believes it's related to work. That's it. He did that. The Commission found that he didn't, and I think it colored the way they viewed this. I think they demanded that he know from the very beginning that his condition was related to repetitive activity, and they discounted his testimony and his evidence because he wasn't able to verbalize that. I think that's apparent in the Commission's decision, and I think that's inappropriate. I think it's inappropriate because, in that sense, the only people who can benefit from this Act are people who are knowledgeable of all kinds of accidents, all kinds of medical conditions, and who can properly notify their employers of those conditions and the accidents, and that's not what this Act is intended to do. It's intended to be liberally construed in favor of injured workers to protect them, and some of them don't have the knowledge that we all have as practitioners. And what constitutes an accident, and what might bring up certain conditions about. I think the Commission didn't give him that hearing, and we would ask that you would reverse the Commission's decision and remand it to the Commission. Thank you, Counsel. The Court will take the matter under advisory for disposition. We'll stand recess for a short period.